UNITED STATES DISTRICT COURT **RECEIVED**

DISTRICT OF MINNESOTA

MAY 20 2024

CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

| | | |
|---|---|---|
| Kayla Lynn Sybrant, | § | |
| Plaintiff | § | |
| | § | **<u>Notice of Removal</u>** |
| V. | § | Removed from: Chisago County |
| | § | District Court |
| | § | |
| | § | Court File No. 13-FA-23-136 |
| Aaron Dale Sybrant | § | Jury Trial Demanded |
| Defendant | § | |

**TO:** Clerk of the U.S District Court of Minnesota

**PLEASE TAKE NOTICE THAT** Defendant, Aaron Dale Sybrant, hereby

removes to this Court the state court action described herein, pursuant to 28 USC §

1446 (a), 28 USC § 1331, 5th and 14th Amendment Due Process Clause, 42 U.S.

Code § 1981, 42 U.S. Code § 1983, 18 USC § 1964 (c) and Title II of the

American with Disabilities (ADA).

Pursuant to 28 USC § 1446 (d) and this Court's Local Rules a copy of this

notice shall be promptly filed upon Counsel for Plaintiff Counsel Julie Swedback

and the Chisago County District Court Clerk.

SCANNED
MAY 20 2024
U.S. DISTRICT COURT ST. PAUL

## **INTRODUCTION**

1. Aaron removes his case to this District Court to expose the ongoing federal violations that have deprived him of his civil rights and caused RICO injuries to his property and business. Aaron's ex-wife, Kayla Sybrant, is running a criminal enterprise that consists of her attorney Julie Swedback, Judge Catherine Trevino, Chief Judge Stoney Hiljus and Chief Appellate Court Judge Susan Segal.

2. Aaron has an existing federal lawsuit that exposed this RICO agenda since April 15th 2024. Aaron presents the same federal question claims and facts in that complaint in this current removal. Aaron has been threatened with incarceration as punishment for exposing the RICO criminal activity to Chief Judge Stoney Hiljus. Aaron has been instructed to come "in person" for a RICO threat of arrest and bodily injury under the authority of Judge Catherine Trevino. This is in retaliation for his recording of the April 26th 2024 hearing that captured serious racketeering activity of wire fraud, mail fraud, extortion, obstruction of justice, fraud and related activity in connection with identification documents, fraud and related activity in connection with access devices, financial institution fraud, obstruction of criminal investigations, obstruction of State or local law enforcement, tampering with a witness, victim or an informant, racketeering, unlawful welfare fund payments and engaging in monetary transactions in property derived from specified unlawful activity. This is scheduled for June 17th 2024 at 9 am.

2

3.  Judge Trevino is a disqualified Judge under the Minnesota Judicial ethics; She is biased against Aaron for the sole purpose of injuring his rights to life, liberty and the pursuit of happiness. Judge Trevino is a racketeer co-conspirator for Kayla's criminal enterprise. "A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially...A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice...A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law...A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." Minnesota Judicial Ethics Canon 2.

4.  "The word "shall" indicates a duty that is mandatory, not one that is optional or discretionary. See id. § 101.03(2) (2011) (stating that "shall" means the "act referred to is mandatory"); see also Webster's Third New International Dictionary 2085 (3d ed.2002) (providing a definition of "shall" that states "used in laws, regulations, or directives to express what is mandatory")." See *Sawh v. City of Lino Lakes*, 823 N.W.2d 627,638 (Minn. 2012). Judge Trevino is at war with the Minnesota judicial canons that require her recusal for bias and Due Process clause.

Aaron's parental rights, business assets and property were intentionally stripped from him by Judge Trevino's bias against him.

5.  Judge Trevino is abusing her judgeship by allowing Kayla to be in contempt of her final judgment entered December 7th 2023. This final judgment and divorce decree was entered after a hearing held on October 20th 2023 for Kayla's "Notice of Intention to Proceed to Judgment by Default." Judge Trevino denied Aaron's request for a continuance. Kayla always intended to have a 100% divorce with all assets awarded to her from the marriage. RICO was the vehicle to accomplish this agenda. Aaron's response to the divorce and counterclaims filed in the case were intentionally ignored by Judge Trevino for Kayla's best interests.

6.  "But the doctrine of res judicata is a doctrine of substantive law. It is that once the legal rights of parties have been judicially or impartially recognized, such recognition is subsequently conclusive as to those rights. The conclusiveness of a judgment, decree or award rests on the same basis as the conclusiveness of a written contract, will or deed. The rights so expressed are the only rights on that subject between the parties... There are obvious distinctions between the subject matter of divorce and the usual controversy over civil matters. The state is in theory a legally interested party in a divorce proceeding; it has a legal interest against the consensual dissolution of the marriage status. In the ordinary civil litigation, however, the state's interest is that of a bystander, and its chief concern is

4

that the controversy be settled by peaceable means, which gives it a purely collateral interest. It is true that it sets up the machinery used by the parties in the settlement of their disputes; but the state's interests in the machinery are purely procedural and jurisdictional ones. It has no substantive interest involved. It seems apparent, therefore, that if the state's principal interest in the settlement of controversies between litigants is that of a bystander there is little point to its insisting on other interest. In fact, whenever the law refuses to give effect to a judgment or decree of a court because it was rendered without jurisdiction of the subject matter, it is as a practical matter denying the sole interest it does have, namely, that of a peaceable settlement of a controversy between parties over their legal rights." See Gavit, B.C., 1932. Jurisdiction of the subject matter and res judicata. University of Pennsylvania Law Review and American Law Register, 80(3), pp.386 & 388. Kayla, Counsel Swedback, Judge Trevino, Judge Hiljus and Judge Segal insist that Aaron's case remain in "res judicata" through fraud and RICO racketeering. The State is not a party at interest in this case but State Officers acting in their personal capacities for an unlawful agenda that violates State and federal law.

7.   Judge Trevino chose to be a participant and co-conspirator in Kayla's enterprise with Counsel Swedback. This was due to the benefits of earning additional income separate from the salary awarded by the State of Minnesota. The

State of Minnesota treasury for the In Forma Pauperis program (IFP) is currently
being defrauded through the fraudulent Fee Waivers issued by Judge Trevino to
parties like Kayla that are not indigent.

8. Aaron filed motions that exposed this fraud in the case that enraged Kayla,
Counsel Swedback and Judge Trevino on April 26th 2024. Aaron is blocked from
accessing the transcripts in his case through the denials and revocations by Judge
Trevino on appeal to the Minnesota Court of Appeals A24-0028 and A24-0341.
Judge Trevino's desire is to keep everything "in house" because of fear of
accountability.

9. Aaron's entire case was founded on fraud and racketeering activity. Kayla
and Counsel Swedback hired a Chisago County Sheriff's deputy to create a false
document of an "affidavit of service" that alleged an "unofficial summons" and
"unverified divorce complaint" with no case number was served upon Aaron on
May 23rd 2023. Counsel Swedback, a privately retained attorney, then filed this
false affidavit of service, unofficial summons, divorce complaint and affidavit of In
Forma Pauperis for Kayla among other things on May 26th 2023 with the Chisago
Courthouse.

10. On May 30th 2023, Judge Trevino GRANTED Kayla's fraudulent fee waiver.
The following day, May 31st 2023, a notice was generated that stated that Judge
Trevino was assigned to the case and case number 13-FA-23-136 *Kayla Lynn*

*Sybrant v Aaron Dale Sybrant* was created. Judge Trevino proceeded to set the Initial Case Management Conference (ICMC) for June 29th 2023.

11. These are the following instructions on the mncourts.gov website regarding the application procedure for the IFP Minn. Stat. § 563.01 in all Minnesota Courts.

**Fees and Costs**

There is usually a fee to file documents with the court, to have the sheriff's office personally serve legal papers on another party, and to get copies of documents from a court file. If you have a **low income and cannot afford to pay** the fees, then you can ask the court to waive the fees.

**You may qualify for a fee waiver** if you fit into any 1 of these 4 categories:

1. You receive public assistance; OR

2. You have a free lawyer from a legal services provider; OR

3. Your income is below a certain amount (see <u>chart</u> below*); OR

4. Your income is not enough to pay for the common necessities of life for yourself and the people you support, and also to pay court fees and costs.

*Under category 3, you qualify if your household's total income, before taxes are taken out, is less than 125% of the Federal Poverty Guidelines for your household size. To qualify under category 3, your household needs to make **less than** what is listed in the chart below.

Your **household** includes:

- Yourself;
- Your spouse or significant other;
- Your minor children; and
- Other dependents living in your home.
  - o **Dependents** are people who rely on you for most of their financial support and can include parents, unmarried partner who does not work outside the home, or extended family members.

### Federal Poverty Guideline Chart

| Number of People in Household | Yearly Household Income (before taxes) | Monthly Household Income (before taxes) | Weekly Household Income (before taxes) |
|---|---|---|---|
| 1 | $18,825 | $1,569 | $362 |
| 2 | $25,550 | $2,129 | $491 |
| 3 | $32,275 | $2,690 | $621 |
| 4 | $39,000 | $3,250 | $750 |
| 5 | $45,725 | $3,810 | $879 |
| 6 | $52,450 | $4,371 | $1,009 |
| 7 | $59,175 | $4,931 | $1,138 |
| 8 | $65,900 | $5,492 | $1,267 |

If you have more than 8 members in your household, add $6,725 annually for **each** additional household member (or $560 monthly or $129 weekly).

12. Kayla was not indigent. Kayla was able to: 1) Pay a Chisago Deputy to serve an unofficial summons and complaint and 2) Hire Counsel Swedback of

8

Swedback Law PLLC. In the April 26th 2024 recording, Counsel Swedback

confessed that she intentionally breached the attorney-client privilege that she had

with Ruth Elachi. Counsel Swedback stated that she submitted a "proposed Fee

Waiver Order" that contained Ms. Elachi's information for Kayla's affidavit. This

was a conspiracy to defraud the State of Minnesota by aggravated identity theft and

false impersonation 18 USC § 1028 and 18 USC § 912.

13. Counsel Swedback stated: "Again, there's really no dots that connect here

your Honor. Mr. Sybrant also argues that petitioner stole the identity of one of my

former clients, a woman I represented through Volunteer Lawyers Network in a

special juvenile immigration status case and that he claims Ms. Sybrant used that

client's financial information to obtain a fraudulent fee waiver from the court. Now

how does he support this? What's his basis for claim of stolen identity? I submitted

as a proposed IFP order, a recycled draft of one that I had submitted for Ms. Elachi

which inadvertently contained Ms. Elachi's name in the section of the proposed

order denying an IFP."

14. "Section 1028A applies to "[w]hoever, during and in relation to any

[predicate] felony ... knowingly transfers, possesses, or uses, without lawful

authority, a means of identification of another person[.]"...the Supreme Court held

in 2009 that in order to secure a conviction under § 1028A, the government must

prove that the defendant knew that the means of identification that he transferred,

possessed, or used "in fact" belonged to another person. Although the meaning of much of § 1028A is open to debate, there is some authority for the proposition that "during and relation to" a predicate offense "connotes causation" and requires evidence that "defendant used the 'means of identification' to further or facilitate the" predicate offense." See (Doyle, What is aggravated identity theft? - CRS reports)[1].

15. Counsel Swedback submitted a "proposed Order" that contained the identification of Ms. Elachi in the case without her knowledge and consent to commit fraud and defraud the state IFP treasury for Kayla's best interests. Judge Trevino had the discretion to reject Counsel Swedbacks proposed order when she determined that Ms. Elachi's name was present on the document; She declined to do so which proved a conspiracy to commit fraud and defraud the IFP program.

16. Kayla has not paid any fees and costs throughout the divorce case but attorney fees to Counsel Swedback. All the court costs and fees might be taxed under Ms. Elachi's Fee Waiver. Because of the false affidavit of service document, Aaron refused to doubt anything regarding the actions of Kayla and Counsel Swedback. After all Counsel Swedback states on her LinkedIn profile and Facebook that she is "committed to helping people find cost-effective solutions to

---

[1] Doyle, C. (no date) What is aggravated identity theft? - CRS reports, Congressional Research Service. Available at: https://crsreports.congress.gov/product/pdf/LSB/LSB10877 (Accessed: 16 May 2024).

their legal issues." Apparently these "cost-effective solutions" include defrauding the State of Minnesota IFP program.

17. Judge Trevino is a rogue judge that believes that she can circumvent the law and rules of the Court for a party's benefit in the case. Aaron filed his 1st motion to recuse pursuant to Rule 106 of Minn. Gen Pract on February 12th 2024. Prior to that, Aaron petitioned Judge Trevino for a stay of her final judgment on January 3rd 2024 pending resolution of the appeal A24-0028. Judge Trevino ignored Aaron's motion. The final judgment stated: "Minnesota Rules of Practice 125 automatic stay of entry of Judgment is waived and Judgment is to be entered immediately."

18. Prior to the filing of Aaron's motion to recuse, Judge Trevino entered a "stay" of her judgment for an improper purpose—to compel Aaron and Kayla to attend "appellate mediation" which was canceled on February 9th 2024. "A judge may encourage parties to a proceeding and their lawyers to settle matters in dispute but **shall not act in a manner that coerces any party into settlement**." Canon 2.6 (B).

19. The appellate mediation was canceled because Kayla was in Contempt of Court; She refused to refinance the VA loan on the former homestead in her name and remit payment of the court ordered equity to Aaron $30,317.5. Aaron timely filed his motion for contempt and petition to Show Cause on February 7th 2024.

Judge Trevino refused to exercise her contempt powers bestowed upon her in Minn. Stat § 588.02.

20. "Every court and judicial officer may punish a contempt by fine or imprisonment, or both. In addition, when the contempt involves the willful disobedience of an order of the court requiring the payment of money for the support or maintenance of a minor child, the court may require the payment of the costs and a reasonable attorney's fee, incurred in the prosecution of the contempt, to be paid by the guilty party. When it is a constructive contempt, it must appear that the right or remedy of a party to an action or special proceeding was defeated or prejudiced by it before the contempt can be punished by imprisonment or by a fine exceeding $50." Kayla remains in contempt of Court and in custody of the minor child GS.

21. Kayla made payments on the VA loan since December 7th 2023 and made no efforts or plans to refinance. Kayla made all the payments on the loan prior to the final judgment. Judge Trevino determined that Kayla was financially stable at the divorce; She wasn't awarded any alimony. "The Court finds that Husband and Wife both have the ability and capability of being self-supporting in terms of their needs. This is evidenced by Wife recently starting work at a construction company as a laborer at $23/hour. She has been averaging ten hours weekly and hopes to increase these hours. She also works as a bookkeeper for another construction

company and is paid $309/week. She is a volunteer firefighter with the Almelund Fire Department, and she receives a nominal pay per fire call, but she is eligible for PERA and other firefighter benefits. Husband has his leather making business and receives Veterans Disability pay. Therefore, Spousal Maintenance is denied for both Husband and Wife." Aaron was homeless living in his truck for almost a year because he had no access to his businesses that were stored at the former homestead.

22. Aaron's businesses that were awarded to him after the divorce are in Kayla's possession in an unknown storage location. Aaron's only source of income is his VA disability pay. However, this has been subject to garnishment by Judge Trevino of $723. Aaron showed that Kayla and Counsel Swedback committed fraud regarding the missing income for the business Advanced Animal Works. This business remained operational while the divorce was pending.

23. Judge Trevino's bias caused her to ignore this proof at the April 26th 2024 hearing which she had jurisdiction of: "In the event there are assets and/or income that have not been disclosed and/or divided herein, the Court **shall retain jurisdiction over said income and/or assets for the purpose of making an equitable division thereof**. The party failing to disclose said income and/or assets shall pay the reasonable attorney fees and costs incurred by the other party in enforcing this provision." Counsel Swedback is the only party allowed to petition

the Court for attorney fees for carrying out the fraud upon the court for Kayla's best interests.

24. Judge Trevino violated Rule 106 of Gen. Pract when she refused to rule on Aaron's 1st motion to recuse "in the first setting." Judge Trevino entered favorable orders that were in Kayla's favor instead such as GRANTING her the right to sell the former homestead on February 13th 2024 knowing that it was an issue along with the division of assets pending appeal. Judge Trevino was quick to issue a sua sponte Order against Aaron for correctly recording RICO criminal activity in the case that occurred on April 26th 2024. Judge Trevino, Counsel Swedback and Judge Hiljus blamed Aaron for their racketeering activity that denied him of equal justice under the law. This is DARVO- Deny and Reverse Victim to Offender.

25. "DARVO (Deny, Attack, Reverse Victim and Offender roles) describes how perpetrators of interpersonal violence deflect blame and responsibility when confronted for their abusive behavior (Freyd, 1997). When used, a perpetrator denies or minimizes the harms of any wrongdoing, attacks the victim's credibility, and reverses victim and offender roles such that the perpetrator assumes a victimized position and declares the victim to be the true perpetrator…Previous research has described tactics that perpetrators might use to temper reactions to their wrongdoings. "Outrage management" is a term that represents a set of techniques employed by perpetrators that mitigate observers' negative evaluations

of both perpetrators and their objectionable behaviors (McDonald et al., 2010). The perpetrator, in order to avoid facing consequences, therefore tries to mollify the potential backlash when held accountable for their actions. McDonald et al. (2010) noted that such outrage management techniques include casting doubt onto the credibility of the victim and denying the victims' versions of events or reframing them so that they appear more innocuous. This closely mirrors the denial and personal attacks described by DARVO. Similarly, both outrage management and DARVO represent ways in which perpetrators actively try to explain away and manipulate bystanders' understanding of abusive events." See Harsey, S. and Freyd, J.J., 2020. Deny, attack, and reverse victim and offender (DARVO): what is the influence on perceived perpetrator and victim credibility?. Journal of Aggression, Maltreatment & Trauma, 29(8), pp.897-916.

26. Judge Hiljus noted in his February 28th 2024 Order that Aaron's motion for contempt and petition to Show Cause was pending before Judge Trevino. Rather than remove Judge Trevino he determined that her actions to ignore the motion showed no bias. On May 15th 2024, Judge Hiljus, after being shown proof of threats by Counsel Swedback to sanction Aaron for filing his motion to reconsider the Order that denied recusal, engaged in "outrage management" techniques.

27. Judge Hiljus went as far as attacking Aaron's pro se litigant status and mental health to defend the ongoing criminal activity in the case. Judge Hiljus

stated the following:

6. The matters at hand before this Court (Respondents second, third and fourth request to remove the assigned Judge) point to the growing issues experienced by Judges of self-represented litigants filing fraudulent claims against judges. These claims often allege misconduct, bias, or corruption, and can damage a judge's reputation. They also create an unnecessary burden on the court system and aim to harass the other party. It is apparent to this Court that these kinds of claims are filed for various reasons, including but not limited to:

   a. **Dissatisfaction with Court Outcome**: Losing a case can lead to frustration and a desire to blame the judge.

   b. **Lack of Legal Knowledge**: Unfamiliarity with court procedures and legal principles can lead to misinterpretations of rulings or actions.

   c. **Mental Health Issues**: Some self-represented litigants may have underlying mental health issues that contribute to their unrealistic expectations and abusive claims.

   These claims, even if demonstrably false and/or unsupported by the law, are time-consuming and expensive to address.

7. These findings are in no way intended to mean that this Court is shirking its duty to consider requests to remove an assigned Judge. This Court reviews such requests on a regular basis and grants requests to remove a Judge when appropriate. In such cases, the appearance of bias on an objective basis becomes apparent. However, this case is not such a case.

28. "A judge shall not make any public statement that might reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court, or make any nonpublic statement that might substantially interfere with a fair trial or hearing...A judge shall not, in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office... A judge with supervisory authority for the performance of other judges shall take reasonable measures to ensure that those judges properly discharge their judicial responsibilities, including the prompt disposition of matters before them...A judge having knowledge that another judge has committed a violation of this Code that raises a substantial question regarding the judge's honesty, trustworthiness, or fitness as a judge in other respects shall inform the appropriate authority...A judge who receives credible information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action... A judge who receives credible information indicating a substantial likelihood that another judge has committed a violation of this Code shall take appropriate action...A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's

17

honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority." Canon 2.

29. Judge Hiljus chose to engage in outrageous conduct that publicly humiliated a 90% disabled military veteran that represented himself in the case. Aaron is protected under the ADA from abuse but Judge Hiljus decided to inflict more damage for reporting the racketeering activity and threats issued against him 10 days apart from Counsel Swedback and Judge Trevino. On May 3rd 2024, Counsel Swedback issued the following threats of sanctions against Aaron because he filed his motion to reconsider the Order that denied his 3rd motion for recusal by Judge Trevino to Judge Hiljus.

Aaron Dale Sybrant
PO Box 4731
Brownsville, TX 78523

**VIA EMAIL ONLY: AARONSYBRANTSTUDIO@GMAIL.COM**

Re:     Sybrant Marital Dissolution: Court File No. 13-FA-23-136
        Petitioner's Rule 9.02 Motion

Dear Mr. Sybrant:

    I received notice of filing your (Second) Motion for Reconsideration to Judge Hiljus. There is no hearing date or time stated in your motion. The Minnesota Rules of General Practice require all motions to set out, with particularity, the date, time, and place.

    Enclosed and served upon you is Petitioner Kayla Sybrant's Minn. Gen. R. Pract. 9.02 motion asking the Court to find you to be a frivolous litigant.

    The Rules require Ms. Sybrant's Rule 9.02 motion to be served upon you 21 days before being filed with the court to afford you the opportunity to withdraw your (Second) Motion for Reconsideration. If you do not withdraw your motion, Ms. Sybrant's motion to find you a frivolous litigant will be heard on June 17, 2024, at 9:00 a.m. at the Chisago County Court house, in Courtroom B. This will be an in-person motion hearing.

    Thank you.

                                Very truly yours,
                                *Julie K. Swedback*
                                Julie K. Swedback
                                Attorney for Petitioner

Attachments

cc: Client

30. Counsel Swedback's actions were abusive and "harassment" to Aaron's mental health. Judge Hiljus chose to blame Aaron for Counsel Swedback's threats rather than report her unprofessional behavior to the Bar. Rule 106 of Gen. Pract did not require a "notice of hearing" with Counsel Swedback. Counsel Swedback never engaged in this behavior when Aaron filed his first motion for reconsideration on February 21st 2024. This was because Aaron exposed the full RICO criminal activity in the case on April 26th 2024; Aaron sent the recording to Judge Hiljus expecting that he would be outraged. Judge Hiljus agreed with Judge Trevino and Counsel Swedback's criminal activity. Judge Hiljus threatened and shut the door on Aaron from any future motions for reconsideration.

31. Aaron remains deprived of the location and communication with his minor child GS. Kayla is currently defrauding the Minnesota "Safe At Home" program for victims of domestic violence, stalking and sexual assault. Kayla's restraining Order was dismissed on June 13th 2023 with prejudice. Kayla also committed check forgery Minn. Stat § 609.631 of an official State of Minnesota property reimbursement check; She forged and endorsed Aaron's signature. Judge Trevino excused Kayla's behavior despite the fact that the check was marital property subject to equitable division.

32. Kayla, Counsel Swedback and Judge Trevino engaged in a scheme to commit bank and mortgage fraud 18 USC § 1344 and 18 USC § 157, aggravated

perjury and suborning perjury regarding the fraudulent sale of the former homestead. Judge Trevino noted the following at the divorce hearing on October 20th 2023: "Wife argues she is entitled to an offset of $22,155.00 for realtor fees and $40,000.00 in costs to repair the home prior to selling it. The Court does not agree with these offsets, and finds Wife failed to provide any testimony or evidence proving she is selling the marital residence, what repairs will be done, estimates for the repairs, or any costs related to selling the home." Judge Trevino was willing to contradict her own Order according to Kayla's desires. The former homestead wasn't supposed to be sold knowing that Aaron had a personal interest in it; It was a VA loan he earned as a servicemember. Kayla was also in willful disobedience of a Court Order.

33. Aaron has been extorted on two occasions of $75 from the partial Fee Waiver granted to him by Judge Trevino for the appeals A24-0028 and A24-0341. Kayla remains defrauding the treasury of the State of Minnesota knowing that she has excess funds from the sale of the former homestead. Judge Trevino refused to revoke her fraudulent Fee waiver.

34. It is apparent that the scheduled "in person" incarceration of June 17th 2024 is to silence Aaron and destroy his life for good. This will not be the case however. The Kayla criminal syndicate is exposed.

35. Pursuant to LR3.1, Aaron completed a civil cover sheet with this pleading.

## BASIS FOR REMOVAL

**1. Removal is Proper because this Court has subject matter jurisdiction pursuant to 28 USC § 1446 (a), 28 USC § 1446 (a), 28 USC § 1331, 5th and 14th Amendment Due Process Clause, 42 U.S. Code § 1981, 42 U.S. Code § 1983, 18 USC § 1964 (c) and Title II of the American with Disabilities (ADA) Pursuant to 28 USC § 1446 (d).**

1. The case between Aaron and Kayla is a federal question case. The case was conceived on fraud and racketeering. Aaron has never received proper Due Process of law regarding the division of assets and care and custody of his child. Also, Aaron's property and belongings were injured without proper Due Process of law.

2. Judge Trevino's bias and blatant refusal to recuse and disqualify is a violation of Due Process. Judge Trevino has also blocked Aaron access to the Court knowing his status as a 90% disabled military veteran protected by Title 2 of the ADA. Judge Trevino's actions triggered 42 USC § 1983.

3. "(a) The district courts of the United States **shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter** by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as

21

the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons… (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee" See 18 USC § 1964 (a) & (c).

4. "A RICO claim is one "arising under the laws of the United States" and thus falls within the district court's original jurisdiction and is removable pursuant to 28 U.S.C § 1441" and "The issue now before the Court is whether to exercise supplemental jurisdiction over the remaining claims. Plaintiffs state the RICO activity predated the foreclosure activities that injured Plaintiffs and thus, the remaining claims are separate and distinct from the state-law claims brought by Plaintiffs (Doc. No. 13). As such, Plaintiffs state supplemental jurisdiction is inappropriate (Doc. No. 13). The Court disagrees with Plaintiffs. All of the claims asserted by Plaintiffs arise from the same nucleus of operative fact (Doc. No. 1). As such, the Court extends supplemental jurisdiction to the remainder of Plaintiffs' claims. Accordingly, Plaintiff's Motion to Remand (Doc. No. 8 & 9) is DENIED" See *Corpe v. Bank of Am., N.A.*, Case No. 2:12-CV4229-FJG, 5-6 (W.D. Mo. Jan. 22, 2013).

5. "The ADA provides comprehensive mandates prohibiting discrimination on the basis of disability. 42 U.S.C. § 12101-12213 (2012). Title II of the ADA specifically states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The United States Supreme Court has held that Title II of the ADA is a valid exercise of Congress' section 5 authority under the Fourteenth Amendment as applicable to cases involving the fundamental right of access to the courts. Tennessee v. Lane, 541 U.S. 509, 533-34, 124 S. Ct. 1978, 1994 (2004)." See *Domagala v. Domagala (In re Marriage of Domagala)*, A16-1360, 12 (Minn. Ct. App. Sep. 11, 2017).

6. Federal Courts have concurrent jurisdiction with State Courts to review cases removed for ADA violations. The Court in *Hudnall v. Texas*, No. EP-22-CV-36-KC-RFC, 6(W.D. Tex. Mar. 21, 2022) held that State and Federal Courts have subject matter jurisdiction over the removal of a case pursuant to the ADA and ADAAA because they were federal statutes codified at 42 U.S.C §§ 12101-12213.

7. Judge Trevino is aware of Aaron's disability status as well as Judge Hiljus. Both judges chose to discriminate against Aaron and violate his right to access the Courts services i.e transcripts, motions for reconsiderations of orders denying recusal, fee waivers on appeal. The mncourts.gov website states the following

regarding ADA accommodations: "The Minnesota Judicial Branch is committed to providing all people with equal access to the courts. To this end, the Judicial Branch strives to make reasonable accommodations for court users with disabilities consistent with the requirements of the Americans with Disabilities Act (ADA) and Minnesota State Statute 363A.11." Judge Trevino is above the law but insists on imposing the law against Aaron.

8. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See 28 U.S. Code § 1331.

9. Counsel Swedback violated her ethical obligations not to use her legal services to commit fraud for the best interests of her client Kayla.

10. Counsel Swedback violated her Oath to the US Constitution when she participated in RICO racketeering that defrauded the State of Minnesota IFP program.

11. Federal Courts are also empowered to issue injunctions against State Officers like Judge Catherine Trevino from threatening proceedings against a litigant that challenged the constitutionality of their actions under the Ex Parte Young Doctrine. "The various authorities we have referred to furnish ample justification for the assertion that individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and

24

who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." See *Ex Parte Young*, 209 U.S. 123, 155-56 (1908).

12. "Where a Court has jurisdiction, it has a right to decide any question which occurs in the cause; and, whether its decision be correct, or otherwise, its judgments, until reversed, are regarded as binding in every other Court. **But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a remedy sought in opposition to them, even prior to a reversal**. They constitute no justification; and all persons concerned in executing such judgments, or sentences, are considered, in law, as trespassers. {340} The jurisdiction of any Court, exercising authority over a subject, may be inquired into in every other Court, when the proceedings of the former are relied on, and brought before the latter by a party claiming the benefit of such proceedings" See *Elliott v. Peirsol*, 26 U.S. 328, 329 (1828).

13. "Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the

judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." See *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 246 (1944).

14. "Most of our state constitutions, echoing Magna Carta, proclaim that "every person ought to obtain justice freely without being obliged to purchase it"; yet, as matters now stand, men are often "obliged to purchase justice" or go without it if they have not the wherewithal." *United States v. Johnson*, 238 F.2d 565, 573 (2d Cir. 1956).

15. Judge Trevino has robbed Aaron of any right to Due Process in this case guaranteed by the US Constitution. This is treason.

## Preservation of Rights and Defenses

16. Aaron preserves all his rights including but not limited to, defenses and objections as to venue, jurisdiction, counterclaims, motions to dismiss/remand, motions for preliminary injunction/restraining order,etc. The filing of this Notice of Removal is subject to, and without waiver of, any such defenses and objections.

17. Aaron also reserves the right to amend or supplement this Notice of Removal.

18. Aaron reserves the right to seek damages including but not limited to pain and suffering, compensatory etc from Kayla for the RICO injuries to his businesses and property.

19. Aaron also reserves his  right to a jury trial at the federal level: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." 7th Amendment to the US constitution.

WHEREFORE, Defendant Aaron Sybrant respectfully gives notice that the above-captioned civil action pending at the Chisago District Court is removed to this Court pursuant to 28 USC § 1446 (a), 28 USC § 1331, 5th and 14th Amendment Due Process Clause, 42 U.S. Code § 1981, 42 U.S. Code § 1983, 18 USC § 1964 (c) and Title II of the American with Disabilities (ADA).

Date: May 17, 2024                                       Respectfully Submitted,


PO Box 4731

Brownsville TX 78523

aaronsybrantstudio@gmail.com
651-269-3296

27